**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
ACTION NO._____**

**Omega Health and Wellness
And
Dr. Roderick Beaman
Plaintiffs
v.**

**CVS Pharmacy
One CVS Drive
Woodsocket, Rhoade Island 02895**

**Serve**

      CT Corporation System
      1200 South Pine Island Road
      Plantation, FL 33324

**VERIFIED COMPLAINT**

NOW COMES the Plaintiff's, Dr. Roderick Beaman and Omega Health & Wellness, by counsel, and for their Verified Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction against Defendant, CVS Pharmacy, Inc. ("CVS"), allege and state as follows:

**I.    THE PARTIES**

1. At all times relevant herein, Dr. Beaman is and has been a resident of and domiciled with Duval County, Florida.

2. At all times relevant herein, Omega Health and Wellness is and has been a Florida corporation, authorized to transact business and licensed to provide medical pain

management and related services within the state of Florida as a medical care facility located within Duval County, Florida.

3. At all times relevant herein, CVS is and has been a Rhode Island corporation whose principal place of business is located in Woonsocket, Rhode Island. CVS has stores and pharmacies throughout the State of Florida, including Duval County, Florida. As well as other counties in Middle Florida.

## II.   JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter because of diversity of citizenship between the parties, the amount in controversy, exclusive of interests and costs, exceeds Seventy-Five Thousand ($75,000), and jurisdiction is therefore proper pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 13919(a), because it is the Judicial District in which substantial events that have given rise to the Verified Complaint occurred.

## III.   RELEVANT FACTS

6. Dr. Beaman is licensed to practice medicine in Florida and has been licensed to practice since September 16, 2002. Dr. Beaman has an unrestricted license to prescribe controlled substances- schedules 2, 2N, 3, 3N, 4, 5 issued by the DEA (Drug Enforcement Agency). Dr. Beaman has been practicing pain management in the State of Florida for approximately 20 years.

7. In 2007, Omega Health & Wellness, was established as a licensed State of Florida medical clinic. Omega Health & Wellness is a State of Florida Licensed Pain Clinic, Florida License PMC1892, with no discipline or public complaints on file.

8. Due to the central location of Omega Health & Wellness's offices in Middle Florida and its established presence within the regional medical community, Omega Health & Wellness serves as a referral center for patients throughout Middle Florida and contiguous Florida counties. Most patients are referred by local primary care providers, as well as by medical specialty practices, including orthopedic spine surgeons and neurosurgeons.

9. As a Florida Licensed Pain Clinic, patients are generally accepted at Omega Health & Wellness by Dr. Beaman upon referral from other health care providers because those providers often lack the specialized training, state licensure, and experience required to manage patients with long-term, complex pain conditions. Dr. Beaman's patients are typically chronic pain patients referred by other physician specialists who present with multiple co-morbidities and complex medical problems, frequently following failed corrective or interventional surgeries. For many of these patients, Dr. Beaman serves as a provider of last resort for the management of chronic, incurable pain.

10. In devising and formulating an individualized treatment plan, any decision to prescribe controlled substances is based on a comprehensive, multi-factor clinical assessment. Factors considered may include, but are not limited to, information obtained from the referring physician; diagnostic studies and testing; relevant E-FORCSE reports; the patient's prior medication history, including previously prescribed controlled substances; current medications prescribed by other providers or specialists; the patient's medical history, age, allergies, functional history, and the presence of co-morbidities or other medical conditions.

11. When a patient presents to Dr. Beaman as a new patient, relevant patient information, medical history, and diagnostic studies are obtained from the referring provider(s), and

applicable controlled substance prescription monitoring programs, prior to the patient's initial visit. At the first appointment, the patient completes a comprehensive intake questionnaire addressing past medical and surgical history, including, but not limited to, prior treating providers, failed conservative measures (such as physical therapy or chiropractic care), current and previously tried medications, and factors contributing to the patient's pain. Recent E-FORCSE/PDMP reports from state-maintained databases of prescribed controlled substances are reviewed. The patient undergoes a thorough history and focused physical examination performed by Dr. Beaman, and additional diagnostic studies or testing may be ordered as clinically indicated. Based on this information, an individualized treatment plan is developed, which may include osteopathic manipulation, durable medical equipment, massage therapy, acupuncture, surgical referrals, rehabilitative therapies (including physical and occupational therapy), laboratory testing, referral for psychiatric or other behavioral health consultations and therapies, and medication management.

12. After meeting with a prospective patient, Dr. Beaman makes a preliminary determination whether to continue controlled substance therapy as part of the patient's treatment plan or to pursue alternative measures, including tapering or discontinuation of medications as medically necessary and appropriate. The patient is educated and counseled regarding the risks and benefits of controlled substances, Omega Health's policies, expectations, and monitoring procedures, and the patient's opioid-related risk factors are assessed. Informed consent is obtained, and the patient executes a Controlled Substance Agreement. As a highly trained and experienced physician, Dr. Beaman conducts a rigorous and methodical review of each patient's E-FORCSE report to identify potential "doctor shopping," assess

adherence to prescribed therapy, detect possible diversion, and evaluate other risk indicators. Patients also meet with Omega Health staff for pill counts and other medication reviews to ensure compliance, and urine drug screening is performed as an additional compliance measure. E-FORCSE reports are reviewed prior to every patient visit. E-FORCSE reports are further used to help prevent medication errors and identify potentially dangerous drug interactions. In addition, at each visit, patients meet with Dr. Beaman and Omega Health staff to review relevant medical records and treatment received from other providers.

13. Omega Health patients are educated by Dr. Beaman and Omega Health staff regarding medication therapy involving controlled substances, provide informed consent to treatment, and are required to execute Controlled Substance Agreements. Patients are provided with written policies addressing urine drug screening and expectations for compliance with Omega Health's policies and procedures. The concept of "doctor shopping" is explained, along with the importance of strict individual compliance, proper use, and secure handling of prescribed medications.

14. If a patient fails one of Omega's routine compliance surveillance measures, a determination is made regarding appropriate, individualized follow-up for that specific patient. Such follow-up measures may include, as clinically indicated, substance-use evaluations, counseling, modification of the patient's medication regimen, enhanced compliance monitoring, or release and discharge from the practice with referral to appropriate providers for additional care, counseling, or treatment.

15. Omega Health has implemented comprehensive processes to ensure compliance with applicable laws and responsible prescribing practices. In addition, staff receive ongoing

training from Omega Health's Compliance Director, Michael Staples, a former Investigator for the State Medical Board of Ohio and a recognized healthcare compliance expert in multiple federal court jurisdictions, who focuses on identifying potential compliance issues and implementing best practices in the management of chronic pain patients.

16. To date, Dr. Beaman has never had a patient die from an overdose of controlled substances prescribed during his twenty years of practice in pain management. Consistent with the policies and procedures of Omega Health, Dr. Beaman's management of the practice and prescribing of controlled substances to patients with chronic pain is conducted in strict compliance with the regulatory standards of the Florida Department of Health, as well as with all applicable state and federal statutory and regulatory requirements governing the prescribing of controlled substances and the operation of a pain management facility.

17. Omega Health has never been served with a search warrant by the United States Department of Health and Human Services or by any other federal or state law enforcement agency. Neither Dr. Beaman nor Omega Health has been notified of any findings of deficiencies by any federal or state agency, including, but not limited to, the United States Department of Health and Human Services, the United States Drug Enforcement Administration, or any equivalent regulatory or law enforcement agency of the State of Florida.

18. On or about April 13th, 2023, Dr. Beaman was contacted by telephone by a representative from the corporate office of Defendant CVS and was asked general questions regarding his practice and prescribing practices. During this conversation, the CVS representative did not notify Dr. Beaman of any specific patient prescriptions being questioned, suspected of lacking medical necessity, or otherwise identified as problematic. Moreover, to date, no

individual pharmacist employed by or affiliated with Defendant CVS has contacted Dr. Beaman regarding any prescription he has written or questioned the medical necessity or appropriateness of any controlled substance prescriptions issued to patients of Omega Health. To the best of Dr. Beaman's knowledge, every prescription he has written that was presented to CVS pharmacies was filled prior to CVS Corporate's implementation of a blanket prescription exclusion. None of his prescriptions have ever been rejected as medically unnecessary, denied payment by third-party payors, or otherwise questioned.

19. Despite these facts, Defendant CVS sent Dr. Beaman a letter dated May 17, 2023, from the corporate office of Defendant CVS that states that CVS was informing its local pharmacists in the Middle District of Florida to stop filling prescriptions Dr. Beaman has written for patients. (See Exhibit 1 hereto.) Other than a cursory telephone conversation which occurred on or about April 13, 2023, regarding Dr. Beaman's practice and general prescribing patterns, CVS has not provided any specific grounds or reasons for its actions of instructing its local pharmacists in the Middle District of Florida to stop filling prescriptions that Dr. Beaman has written for patients.

20. On or about December of 2024, Dr. Beaman applied for removal of the CVS Corporate Pharmacy Exclusion and subsequently participated in a telephone conference with CVS on or about March 18, 2025, regarding that request. CVS again failed to conduct a meaningful investigation, as the conversation consisted only of general prescribing questions. During the call, the CVS representative did not identify any specific patient prescriptions alleged to lack medical necessity or otherwise considered problematic. CVS was asked whether it had concerns regarding any specific patients or whether it wished to review medical records for any individual patients, and CVS declined.

21. On or about April 2025, Dr. Beaman received a letter from CVS denying his request for removal of the CVS Corporate Pharmacy Exclusion. CVS did not request any individual patient information or medical records before reaching its decision, even though such records had been offered. CVS further provided no specific grounds or justification for instructing its local pharmacists in the Middle District of Florida to stop filling prescriptions written by Dr. Beaman for individual patients.

22. The prescriptions written by Dr. Beaman for his patients are medically necessary and fully comply with all applicable state and federal laws and regulations governing the prescribing of controlled substances. To date, CVS has provided no evidence or documentation to suggest otherwise.

23. At no time has any individual pharmacist employed by or affiliated with CVS in Middle Florida raised any questions or made any accusations or statements to Dr. Beaman that any of his prescriptions for controlled substances are for anything other than legitimate medical purposes. No individual pharmacist with CVS or any other pharmacy has contacted Omega Health or Dr. Beaman to question the medical necessity of the prescriptions, or otherwise question the compliance of the prescriptions with all applicable federal and state legal guidelines and clinical guidelines regarding the prescribing of controlled substances.

24. CVS's refusal to fill medically necessary prescriptions written by Dr. Beaman will force patients to leave Omega Health to seek care elsewhere. Given the shortage of licensed pain management physicians in Middle Florida, patients will face significant difficulty obtaining necessary treatment. Patients are currently being harmed as CVS interferes with their patient care. (See Declarations of Lawrence Rhodes and Jacqueline Lee, Exhibit 2).

25. CVS's directive to local pharmacists in Middle Florida to refuse all prescriptions written by Dr. Beaman conveys to patients that his prescriptions are illegitimate, improper, or noncompliant with the standard of care. This blanket exclusion severely undermines patient trust and irreparably harms the professional reputation and standing of Dr. Beaman and Omega Health within the Middle Florida medical community.

26. CVS's actions force Dr. Beaman's and Omega Health's patients to choose between continuing care with a physician they have known for years and seeking an alternative to CVS, or retaining CVS and attempting to find a new physician capable of understanding their individual medical history and needs. These actions unfairly, improperly, and unnecessarily impose a burdensome and harmful dilemma on patients

27. CVS has a documented history of settlements and judgments related to its role in the opioid epidemic. In 2015, CVS reached a $22 million settlement with the Department of Justice concerning improper opioid distribution. In 2016, CVS reached an $8 million settlement for unlawful distribution of controlled substances. To address its prior unlawful and non-compliant practices, CVS established a "drug monitoring program" in 2012, which "uses algorithms to gather aggregate data on physician prescribing practices to identify physicians who demonstrate extreme patterns of prescribing certain highly regulated drugs." Bradley v. CVS Pharmacy, Inc., 64 Cal. App. 5th 902, 910 (2021). Physicians "flagged for high-risk prescribing activity" under this program are subsequently interviewed and investigated.

28. CVS's opioid monitoring program requires that an investigation be conducted before any action is taken against a provider. In this instance, however, CVS failed to conduct a meaningful investigation. CVS did not review individual medical records or diagnostic

studies, perform an on-site audit of Dr. Beaman's practice, or examine patients' individual pharmacy profiles. Instead, CVS seeks to deny patients medically necessary treatment solely based on the output of an algorithm or prescribing pattern.

29. Under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., a prescription for a controlled substance is lawful if it is issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice, and is dispensed by a pharmacist exercising corresponding responsibility. 21 C.F.R. § 1306.04(a).

30. Neither the CSA nor its implementing regulations grant a corporate pharmacy entity the authority to categorically blacklist a licensed physician or to impose a blanket refusal to fill all prescriptions written by a practitioner absent individualized licensed professional assessment of each prescription.

31. Establishing a "likelihood of success on the merits" for injunctive relief against pharmacy or physician exclusions relies on proving that the exclusion violated specific statutory, contractual, or constitutional protections. Under Fla. Admin. Code R. 64B16-27.831, a corporate pharmacy such as CVS cannot lawfully impose a blanket exclusion on all prescriptions written by Dr. Beaman because the rule requires an individualized, prescription-specific determination of validity based on the pharmacist's independent professional judgment, not a preemptive, prescriber-based refusal. The rule expressly mandates that when concerns arise regarding a controlled substance prescription, the pharmacist "shall attempt to determine the validity of the prescription" and "shall attempt to resolve those concerns" by taking affirmative investigative steps, including communicating with the patient, communicating with the prescriber or the prescriber's

agent, and/or consulting the Prescription Drug Monitoring Program. A categorical corporate policy refusing all prescriptions from a particular physician bypass these required investigatory steps, substitutes corporate policy for professional judgment, and eliminates the case-by-case analysis the rule demands. Because Rule 64B16-27.831 conditions a lawful refusal on unresolved concerns after reasonable efforts to validate a specific prescription, a blanket exclusion based solely on the identity of the prescriber is incompatible with the rule's minimum standards of practice and therefore fails to comply with Florida law.

32. Further, pursuant to Florida Statutes § 458.3265 (2024), a pain-management clinic is expressly defined as a medical practice in which, during any given month, a majority of patients are prescribed controlled substances for the treatment of chronic nonmalignant pain, and such clinics are authorized to operate when duly registered with the Florida Department of Health and supervised by a physician holding a full, active, and unencumbered Florida medical license. Omega Health & Wellness is a duly licensed Florida pain-management clinic, and Dr. Beaman, as its licensed and designated physician, is statutorily authorized to examine, diagnose, and treat pain patients, including the lawful prescribing of controlled pain medications in compliance with state and federal law. Any exclusion imposed by CVS Pharmacy or CVS Corporate based solely on algorithmic analysis of prescribing patterns, rather than individualized patient records or regulatory findings, directly conflicts with the statutory definition and licensed purpose of a Florida pain clinic under § 458.3265, which expressly contemplates that a majority of patients will receive controlled substances as part of legitimate pain treatment. Such corporate exclusion policies should not negate, supersede, or limit the legal authority granted by the State of

Florida to licensed pain clinics and physicians acting within the scope of their professional licensure.

33. Pharmacists may decline to fill an individual prescription when a specific, articulable concern exists regarding its legitimacy. However, both Florida and federal law do not permit a corporate directive that prohibits pharmacists from exercising individualized licensed professional judgment based solely on the identity of the prescriber.

34. CVS effectively admits that its blanket corporate decision to deny the filling of medically necessary controlled substance prescriptions written by Dr. Beaman was not the result of individual licensed pharmacists exercising professional judgment. This is evidenced by its May 17, 2023 letter to Dr. Beaman stating: "Despite our attempts to resolve the concerns with your controlled substance prescribing patterns, these concerns persist."

35. By substituting a corporate algorithm and risk-avoidance policy for the individualized professional judgment of a licensed pharmacist required by law, CVS exceeded the scope of any "corresponding responsibility" and unlawfully interfered with the physician–patient relationship. (See Declaration of Michael Staples, Exhibit 3).

36. CVS's conduct amounts to a de facto revocation of Dr. Beaman's prescribing authority, a power reserved exclusively to state and federal regulatory agencies through due process.

37. Since the exclusion, Omega Health and Wellness has experienced a cascading exclusions effect where one pharmacy's decision to exclude a physician or another pharmacy triggers a chain reaction. It has caused a recognized systemic risk driven by automated compliance systems and corporate risk-aversion not actual investigation of noncompliance.

38. Since the exclusion, an informal corporate mimicry of sorts has taken place as it is common for corporate pharmacies to follow suit once they learn a prescriber has been

excluded by a competitor. This "herding behavior" often occurs without a separate, independent investigation by the subsequent pharmacies. Since CVS's exclusion, two more major pharmacies have excluded Dr. Beaman without investigation or cause.

39. Pharmacy Benefit Managers (PBMs) increasingly use "cross-network termination" to target entire groups of pharmacies under common ownership or affiliation. If one location in a group is terminated following an audit, PBMs may exclude all affiliated locations simultaneously. A PBM terminates or excludes a physician from one affiliated network and then leverages that exclusion across all PBM controlled networks even where the alleged issue has no medical, contractual or factual nexus. The aggregate effect can be detrimental to patients and business.

40. Since the CVS exclusion, Omega Health and Wellness have lost approximately one-third of its patient population and risk more financial and operational collapse with each passing day. It has led to a rapid loss of revenue that triggers further exclusions, as the pharmacy is no longer seen as a viable "preferred" partner.

41. The harm from cascading exclusions is immediate and often final, and injunctive relief is now necessary to prevent these exclusions before they continue to trigger more collapse and the ongoing tortious interference with a business collapses Omega Health and Wellness and does permanent patient harm.

## COUNT I

## TORTIOUS INTERFFERENCE WITH A BUSINESS RELATIONSHIP

42. Plaintiffs incorporate by reference all previous averments set out herein and further plead as follows.

43. According to the American Medical Association ("AMA") Code of Ethics, an implied contract exists between patients and their physicians, which gives rise to physician's ethical responsibility to place patients welfare above the physician's own self-interest or obligations to others, and to use sound medical judgment on patients' behalf, and to advocate for their patient's welfare.

44. Defendant, a large national pharmacy chain, has knowledge of the sanctity of the relationship between a physician and patient and a pharmacist and patient.

45. Defendant deliberately interfered with this relationship between Dr. Beaman and his patients by instructing its pharmacists to abandon their professional duty and their discretion as pharmacists and refuse to fill Dr. Beaman's prescriptions.

46. Defendant deliberately interfered with Dr. Beaman's patient's ability to receive adequate treatment when it informed local pharmacies to abdicate their duty to individually assess each prescription issues by Dr. Handen to a CVS pharmacy customer for legitimacy.

47. Defendant intentionally interfered with the relationship between Dr. Beaman and its patients who choose to fill prescriptions at CVS and caused a breach of that relationship by refusing valid prescriptions for legitimate medications.

48. Defendant took these actions without conducting a proper investigation and armed only with the results of an algorithm. In taking this action, Defendant breached its own policies and engaged in the unauthorized practice of pharmacy by usurping the professional judgment of its pharmacists.

## COUNT 2

### DEFAMATION PER SE

49. Plaintiffs incorporate by reference all previous averments set out herein, and further plead as follows.

50. Defendant falsely conveyed to Plaintiff's patients that Dr. Beaman and Omega Health has done something illegal by CVS's refusal to honor the prescriptions.

51. These statements directly impacted Plaintiff's reputation with their patients, prospective patients, other local pharmacies and the US Drug Enforcement Agency.

52. Defendant made these statements about Plaintiffs Beaman and Omega Health in reckless disregard for the truth, which is that Plaintiffs are not subject of any disciplinary acts or findings on a federal or state level.

53. As a direct and proximate result of Defendant's conduct, Plaintiffs will and have suffered injuries to their reputations, in an amount that exceed the jurisdictional minimum of this Court.

## COUNT 3

### INJUNCTIVE RELIEF

54. Defendant engaged in the unlicensed practice of pharmacy by making a corporate decision to instruct licensed pharmacists to refuse to fill prescriptions before individually determining medical necessity.

55. CVS is one of the nation's largest pharmacy chains and its decisions carry weight in the pharmacy community. Smaller pharmacies are certain to mirror CVS's decision for fear of regulatory scrutiny.

56. Soon, other pharmacies will begin to refuse Omega Health and Beaman's legitimate prescriptions issues to its legitimate patient population based solely on CVS's decision which was predicated on merely statistical data and absent specific factual findings.

57. As a result, patients of Omega Health and Dr. Beaman will begin to have all their prescriptions refused by all local pharmacies regardless of medical need.

58. Blanket refusal of a pain management provider's opioid prescriptions will cause Omega Health severe economic harm and will lead to loss of the business and inadequate treatment to its patient population.

59. Omega Health patients cannot simply go to another pharmacy. As a result of Defendant's ill informed, hasty and aggressive action, Omega Health will be labeled as "pharmacy shoppers" and treated with suspicion. This concept was established by the DEA in its administrative proceedings and it takes aggressive action – up to and including registration suspension- against a pharmacy that filles prescriptions for patients who use multiple pharmacies or received prescriptions from physicians who are "red flagged". *See In Re Holiday CVS, LLC*, 77 Fed. Reg. 198 (20212)(revoking the registration of a pharmacy where its pharmacists dispended controlled substances pursuant to prescriptions which raised red flags that a pharmacist could not resolve).

60. Stigma associated with pain patients and pain management providers in the United States is a real concern. In 2019 the United States Department of Health and Human Services (HHS) issues a report addressing the stigma that pain management patients face. HHS determined that "reducing barriers to care that exist as a consequence of stigmatization is crucial for patient engagement and treatment effectiveness". CVS use of an algorithm to label a provider as illegitimate is directly contrary to HHS's direction to increase patient engagement and retard stigmatization.

61. Dr. Beaman, Omega Health and its patients will carry stigma as a result of CVS's decision and real patients with very serious medical issues will be denied treatment if CVS is

permitted to continue to make corporate medical decisions that impact a large number of Florida residents suffering from legitimate pain.

62. Omega Health and Dr. Beaman will be successful on the merits of this action. CVS did not review a single medical record before summarily determining that Dr. Beaman's prescriptions are illegitimate. It did not speak to a single patient, isolate a single prescription as illegitimate or conduct a site inspection of the practice. CVS simply used an algorithm to determine the risk level associated with IPS's volume of patients and made a corporate decision that impacts the health of over 200 patients and likely countless others.

63. Dr. Beaman and his patients and Omega Health will suffer irreparable injury if this Court does not act. The denial of necessary medical care, and more specifically pain treatment for debilitating and severe medical conditions, will cause irreparable injury. Patients who physician patient relation is abruptly severed by CVS will face immediate and debilitating pain. Lack of available providers in the local area will cause patients to go without treatment causing further injury and exacerbation of their fragile medical conditions, or seek other avenues for pain treatment. While each of the more than 200 patient at Omega Health have varying degrees of medical issues, ranging from severe to moderate, the single commonality they share is that they have all been referred to Omega Health for pain treatment by a qualified primary care physician who has determined that they require treatment. CVS seeks to deny that treatment based on its use of algorithms casting each patient into the parade of horribles that comes with denial of legitimate medical case.

64. Dr. Beam and Omega Health will also suffer irreparable injury to his professional reputation, the reputation to his practice and the ability of his practice to continue to operate after being effectively sanctioned by one of the nation's largest pharmacy chains.

CVS's actions are hasty, ill informed and aggressive. However, these actions will have impact on Dr. Beaman's reputation and the survivability of his clinic.

## CLOSING

65.     Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belied that this complaint: 1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation; (2) is supported by existing law or but a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically identified, will likely have evidence support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

WHEREFORE, Plaintiffs respectfully demand:

1.   A summons be issued to Defendant CVS;

2.   That this Court enjoin Defendant from issuing an order to all of its pharmacists to refuse Dr. Beaman's prescriptions;

3.   That this Court award Plaintiff's all their costs expended herein including a reasonable attorney's fee; and

4.   That this Court award Plaintiff's all other relief to which Petitioner may appear entitled.

Date:   February 23, 2026                    Respectfully Submitted,

                                             /s/ Meggan B. Sullivan
                                             Meggan B. Sullivan, Tennessee Bar. 33067

410A 37th Avenue North
Nashville, TN 37209
megganbsullivan@gmail.com
(615) 457-0449

## CERTIFCATE OF SERVICE

I hereby certify that a copy of this Complaint and Emergency Motion has been served on CVS via regular US Mail to CVS Pharmacy Inc., 1 CVS Drive, Woonsocket, RI 02896 and CT Corporation, 1200 South Pine Island Road, Plantation, FL 33324.

/s/ Meggan B. Sullivan

## VERFICATION OF RODERICK BEAMAN, D.O.

I, Roderick Beaman, D.O., after being first duly sworn and depose and state that I have read and reviewed the foregoing Verified Complaint and that the allegations contained therein are true and correct to the best of my knowledge and belief.

Dated:        1/26/2026

_Roderick Beaman DO_

Roderick Beaman, D.O.

STATE OF FLORIDA            )
COUNTY OF DUVALL            )

The foregoing Verification was acknowledge, sworn to and subscribed to before me by Roderick Beaman, D.O. on this 26th day of January, 2026.

_Kathleen Hullinger_

NOTARY PUBLIC, FLORIDA
Notary Expiration Date:
Notary ID#  _HH 373295_

KATHLEEN HULLINGER
Notary Public - State of Florida
Commission # HH 373295
My Comm. Expires Apr 18, 2027
Bonded through National Notary Assn.